IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03585-PAB

DARRYL LEE GRACIE,

      Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Darryl Gracie on December 18, 2019. Plaintiff seeks review of the final decision of the defendant (the "Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

**I. BACKGROUND**

On September 13, 2016, plaintiff applied for social security benefits under Title II of the Act. R. at 22. Plaintiff alleged a disability onset date of October 31, 2015. *Id.* After his claims were initially denied on February 3, 2017, plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on November 5, 2018. *Id.*

On January 8, 2019, the ALJ issued a decision denying plaintiff's claim. R. at 19. The ALJ found that plaintiff had not engaged in substantial gainful activity since the

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

disability onset date and had the following severe impairments: degenerative disc disease; herniated disc of the lumbar spine; and history of stroke. R. at 24. Additionally, the ALJ determined that plaintiff had several non-severe impairments: axilla abscess, obesity, hypercholesterolemia, and lipoma. R. at 25. The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525 or 404.1526. *Id.* Ultimately, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform light work with the following qualifications:

> he can occasionally stoop, kneel, crouch . . . crawl[,] and climb stairs, but can never balance or climb ladders. He can never work at unprotected heights.

*Id*. The ALJ determined that plaintiff was unable to perform any past relevant work, R. at 26, but found that other jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 30-32.

On October 30, 2019, the Appeals Council and denied plaintiff's request for review. R. at 1. Accordingly, the ALJ's decision became the final decision of the Commissioner. *Id.*

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse

an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and quotation omitted). "The threshold for such evidentiary sufficiency is not high." *Id.* Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

>which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

>(1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff claims that the ALJ committed four errors: (1) the ALJ failed to consider that plaintiff's economic situation prevented him from seeking medical assistance; (2) the ALJ did not properly consider the report of a neurologist and the vocational expert; (3) the ALJ erred in not considering plaintiff's age; and (4) the jobs identified by the ALJ do not exist in significant numbers in the national economy. *See* Docket No. 16 at 6-7. The Court addresses each in turn.

### A. Economic Circumstances

Plaintiff argues that the ALJ failed to consider that economic circumstances prevented plaintiff from seeking medical assistance. *See id.* at 10-12. Specifically, plaintiff contends that if a "[c]laimant's failure to seek medical care becomes an issue the [ALJ] is required to inquire as to whether the [c]laimant's failure to seek treatment was the result of his lack of funds." *Id.* at 11. The Court is not persuaded.

First, plaintiff cites to Social Security Ruling 16-3P. *See id.* As relevant here, in determining the credibility of a claimant's disabling symptoms, an ALJ will consider whether "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaint." Soc. Sec. Ruling 16-3P Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017). However, in doing so, an ALJ may "not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the

degree of his or her complaints." *Id.*  Contrary to plaintiff's assertion, S.S.R. 16-3P is irrelevant to plaintiff's situation.

Nowhere in the ALJ's decision did the ALJ rely on plaintiff's failure to receive medical treatment as a basis for denying plaintiff's claim.  Rather, as to plaintiff's memory loss, the ALJ noted that there were no "references to memory loss or any treatments thereof."  R. at 29.  Instead, the ALJ found that, although he suffered a stroke in 2003, "he was cleared by his primary care physician," and the only reference to potential memory loss was a single consultation note from 2009.  *Id.*  As to plaintiff's physical condition, the ALJ noted that some treatments provided "100%" relief, including the recommended epidural injections that plaintiff underwent, as well as over the counter medications.  R. at 27.  While the ALJ stated that plaintiff "denied undergoing physical therapy or surgery on his back," *id.*, the ALJ did not deny plaintiff benefits because plaintiff failed to undergo surgery or take physical therapy.  Rather, the ALJ found that, with plaintiff's injections and medications, plaintiff was able to do housework, go to the store, drive, and ambulate without assistance.  R. at 26-27.  Thus, S.S.R. 16-3P is inapplicable because the ALJ did not deny plaintiff benefits on the basis of plaintiff failing to seek treatment.

In reply, plaintiff argues that a "significant part" of the ALJ's "credibility analysis was the medi[c]al record," and the "medical record was strongly influence[d] by [plaintiff's] large deductible and his lack of funds."  Docket No. 18 at 12.  In other words, the evidence that the ALJ was required to rely on – the record – was insufficient because plaintiff could not afford to be seen by medical professionals.  But plaintiff cites no support for the proposition that a claimant can be found disabled as a result of

6

information not in the record, even if that information was not in the record as a result of the claimant being unable to afford medical treatment. Plaintiff's citation to *Crawford v. Chater*, 997 F. Supp. 1387, 1396 (D. Colo. 1998), is unavailing. Rather than supporting plaintiff's argument, *Crawford* states that "an ALJ may not deny benefits based only on a lack of objective medical evidence when it is evident that a claimant's ultimately disabling problems began prior to the expiration of his insured status." *Id.* at 1395. The court further stated that, "[w]hen the ALJ relies on the claimant's failure to pursue treatment as his support for his determination of noncredibility," the ALJ must apply the factors from *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987). *Crawford*, 997 F. Supp. at 1395-96. But *Frey* is inapplicable when "noncompliance with prescribed treatment is [not] invoked [] as an independent basis for denying disability." *Johnson v. Colvin*, 640 F. App'x 770, 774 (10th Cir. 2016) (unpublished) (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). As already stated, the ALJ did not base the finding of non-disability on plaintiff's failure to get treatment, but only noted that plaintiff did not seek other treatment and his less invasive treatments appeared to be working.[2]

### B. Report of Bennett Machanic, M.D., and Bonnie Martindale

Plaintiff argues that the ALJ failed to properly consider and give due weight to two opinions: the report of Bennett Machanic, a neurologist, and the hearing testimony

---

[2] Plaintiff also cites *Brown v. Barnhart*, 362 F. Supp. 2d 1254, 1262 (D. Kan. 2005), and *Walker v. Callahan*, 990 F. Supp. 1283, 1287 (D. Kan. 1997). *See* Docket No. 18 at 12-13. But both of those cases stand for propositions similar to S.S.R. 16-3P and *Crawford*: if non-disability is going to be found based on a lack of prescribed treatment, the ability to afford that treatment should be considered. *See Brown*, 362 F. Supp. 2d at 1261; *Walker*, 990 F. Supp. at 1287 (applying *Frey*, 816 F.2d at 517). But, as already concluded, the ALJ did not make a finding of no disability based on plaintiff's failure to seek treatment or take a prescribed course of treatment.

of Bonnie Martindale, the vocational expert. See Docket No. 16 at 12-15. As to Dr. Machanic, plaintiff argues that the ALJ rejected Dr. Machanic's entire report because his report included an opinion that plaintiff was disabled. See id. at 14. As to Ms. Martindale, plaintiff contends that the ALJ failed to respond to her hearing testimony that plaintiff would need "balance to get up inside of a truck or get outside of a truck." See id. at 15. Plaintiff, however, misconstrues both the ALJ's analysis of Dr. Machanic's report and Ms. Martindale's testimony.

On October 15, 2018, Dr. Machanic wrote a report titled "New Patient Consultation." R. at 540. At the outset, Dr. Machanic's report states that he only was provided "some medical records from which I have gleaned some degree of significant information." R. at 540. He notes that "the information from the patient and his wife . . . [was] the predominant [source] of information." Id. Dr. Machanic does not differentiate between what was "gleaned" from "some" medical records versus what was told to him my plaintiff and his wife. Id. The report then makes "objective" findings, wherein Dr. Machanic states that plaintiff's head is "grossly normocephalic, atraumatic"; his neck is "supple with good range of motion"; his lower back has "muscle tightness" and is "straightened; his "gait and station shows ability to walk on tiptoes and on heels"; and, as to his memory and confusion, he frequently gets confused and has difficulty with abstraction and difficult questions. R. at 542. At the end of his report, Dr. Machanic states that he is skeptical that plaintiff's issues will be "easily reversible" and that "[e]ither the cognitive dysfunction or in fact the low back problems with the left leg issues would be both clinically significant barriers to his resuming work," and that plaintiff is "permanently disabled." R. at 543.

The ALJ reviewed this report in the hearing decision. The ALJ noted that Dr. Machanic's report was primarily based on subjective reporting by plaintiff and his wife and a limited physical exam of plaintiff. R. at 28. Then the ALJ noted that the decision regarding whether plaintiff was disabled, as opined by Dr. Machanic, was reserved to the commissioner. R. at 29. Ultimately, the ALJ decided to give Dr. Machanic's opinions little weight because (1) he did not include function-by-function limitations; (2) his opinions were primarily based on subjective reporting by plaintiff and his wife; (3) Dr. Machanic was not plaintiff's physician and had no ongoing treatment relationship with plaintiff; and (4) Dr. Machanic's opinion was based on a single, one-time examination. *Id.* Thus, contrary to plaintiff's assertion that the ALJ "failed to evaluate and consider" Dr. Machanic's report, Docket No. 16 at 14, the ALJ explicitly did so.

Moreover, plaintiff does not argue that the ALJ applied the incorrect analysis in determining what weight to give Dr. Machanic's report. Rather, he argues that, the failure to properly review Dr. Machanic's report was an error of law because "Dr. Machanic's detailed analysis would have barred employment." *Id.* The Court finds that, not only did the ALJ review Dr. Machanic's report, but that his analysis regarding what weight to give the report applies and follows the appropriate guidelines. An ALJ is to consider the examining relationship, the treatment relationship, and the supportability of an opinion. *See* 20 C.F.R. § 404.1527(c)(1)-(3). Treating sources, longer medical relationships, and opinions that "present[] relevant evidence . . . particularly medical signs and laboratory findings," are all given more weight. *Id.*, § 404.1527(c)(3). Here, as the ALJ properly concluded, Dr. Machanic saw plaintiff on one occasion, reviewed few objective medical reports, and primarily relied on subjective reporting of plaintiff and

his wife. Under these circumstances, it was appropriate for the ALJ to give Dr. Machanic's opinion less weight. *See Flaherty*, 515 F.3d at 1070 (concluding that it was appropriate to discount the opinion of a source that was based "on a single, subjective report" given by the claimant); *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (noting that a lack of support for findings and brief treatment relationship were appropriate reasons to give less weight to an opinion). Thus, the Court finds that the ALJ's decision to give little weight to Dr. Machanic is supported by substantial evidence.

Next, plaintiff contends that the ALJ "ignored" the testimony of Ms. Martindale, the vocational expert. Docket No. 16 at 14-15. However, plaintiff cherry-picks part of the hearing testimony and cuts off the exchange that happened after the part that he quotes. At the hearing, the ALJ asked Ms. Martindale whether, if plaintiff was required to balance, plaintiff's ability to work would change. R. at 84 ("If we add in that this individual should never be required to balance as part of his employment would that impact the opinions you've previously given relative to past work and the jobs that you listed?"). Ms. Martindale responded yes because she believed that "you need to have the ability to balance to get up inside of a truck." R. at 85. The ALJ, however, clarified his question saying that he was "talking about balancing as part of their job requirements." *Id.* Ms. Martindale responded that lumber carrier, doctor sweeper, street sweeper, chauffeur, telephone director distributor, book mobile drive, and mobile lounge driver had no balance requirements. *Id.* Critically, Ms. Martindale did not state that she still had concerns regarding balance for those jobs given that they did not require balance on the job. And, in the ALJ's decision, the ALJ explicitly stated that Ms. Martindale testified that plaintiff could be a domestic service driver, telephone directory

distributor driver, and a lumber carrier driver, all of which did not require balance. R. at 31-32. Thus, plaintiff's argument that the ALJ did not consider Ms. Martindale's testimony is unpersuasive.

### C. Age

Plaintiff contends that the ALJ did not properly consider plaintiff's age in determining whether plaintiff could maintain employment. Docket No. 16 at 16. Plaintiff's argument is unclear. Plaintiff fails to cite any part of the ALJ's decision where the ALJ should have, but did not, consider plaintiff's age. And, in any event, the ALJ specifically noted that plaintiff was 55 years old at the alleged disability onset date, and asked the vocational expert to consider plaintiff's age in determining what jobs would be available. R. at 31; R. at 82. What plaintiff appears to be arguing is that his age, in combination with the ALJ's use of the "grids," was error. But the ALJ did not improperly use the grids. "The grids are tables prepared by the Secretary which evaluate a claimant's ability to work by matching the claimant's age, education, and work experience with his work capability." *Trimiar*, 966 F.2d at 1332. "The grids help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations." *Id.* (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991)). The grids, however, may not be applied "conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular grid." *Id.* (citing *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)). And, "where nonexertional impairments are also present, the grids alone cannot be used to determine the claimant's ability to perform alternative work." *Id.* at 1333 (citing

*Campbell v. Bowen*, 822 F.2d 1518, 1523 n.2 (10th Cir. 1987)). Here, however, the ALJ did not rely on the grids to conclusively establish plaintiff's work ability. Rather, the ALJ noted that only when a "claimant can perform all or substantially all of the exertional demands at a given level of exertion [will] the medical-vocational rules direct a conclusion." R. at 31. The ALJ did not state the grids directed a conclusion. *Id.* Rather, the ALJ relied on the testimony of a vocational expert. R. at 31-32.

### D. Step Five

Plaintiff contends that the ALJ was "required to analyze the number of jobs using the factors set forth" in *Trimiar*, 966 F.2d at 1330-32. Docket No. 16 at 17. Specifically, plaintiff argues that the roughly 95,000 jobs identified by the ALJ are "so small" as to be insignificant and, thus, application of *Trimiar* was required. *Id.* at 18. Defendant contends that *Trimiar* only applies to situations where the ALJ relies on regional or local jobs only. *See* Docket No. 17 at 12. While the Court agrees with plaintiff that *Trimiar* is not limited to regional numbers only, *see Raymond v. Astrue*, 621 F.3d 1269, 1274 n.2 (10th Cir. 2009), the Court nonetheless finds that the Commissioner met his burden.

At step five, the Commissioner must demonstrate that there are alternative jobs in the national or regional economy in significant numbers that are within the claimant's RFC. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.966(a)-(b). Here, the ALJ presented a series of hypotheticals to the vocational expert, who testified that, based on plaintiff's limitations, previous work history, and age, plaintiff could find work as a book mobile driver, telephone directory distributor driver, chauffeur, mobile lounge driver, street sweeper operator, and lumber carrier drive. R. at 83-84. Plaintiff is correct that the ALJ did not explicitly list the factors from *Trimiar*. But *Trimiar* does not hold that those

factors are exhaustive.  Rather, *Trimiar* states that "[a] judge should consider many criteria . . . [including] the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and available of such work, and so on."  966 F.2d at 1330.  Here, the ALJ, did consider plaintiff's RFC, or in other words, plaintiff's "level of . . disability," and the vocational expert's testimony, and found that plaintiff could find work as a driver, domestic service, with 9,785 jobs in the national economy, telephone director distributor driver, with 22,400 jobs in the national economy, and lumber carrier driver, with 63,300 jobs in the national economy.  R. at 31-32.  Plaintiff provides no support that an ALJ who relies on a vocational expert's testimony and applies the plaintiff's RFC to find jobs numbering nearly 100,000 has failed to meet the Commissioner's burden at step five.  Nor has plaintiff provided a single case where such a number of jobs in the national economy is considered "so small" to render it insignificant.

## V.  CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**.  It is further

**ORDERED** that this case is closed.

DATED March 29, 2021.

                                    BY THE COURT:

                                    _____
                                    PHILIP A. BRIMMER
                                    Chief United States District Judge